**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WAYNE P. MARTA,<br>25797 Briarwood Court<br>Westlake, OH 44145- 5707 | ) ) ) | |
| | ) | CASE NO. __________________ |
| v. | ) ) | |
| HON. RYAN D. MCCARTHY<br>Secretary of the Army<br>101 Army Pentagon<br>Washington, DC 20310-0101 | ) ) ) ) | |

**COMPLAINT**

**(APA Review of Final Decision of Army Board for The Correction of Military Records)**

## I. JURISDICTION AND VENUE

1. This action seeks review of the final decision of the Army Board for Correction of Military Records (ABCMR), dated January 8, 2020,[1] denying Plaintiff's application to correct his military records. The ABCMR's decision is a final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. Plaintiff raises claims under federal statutes and Department of Defense regulations.

---

[1] The ABCMR also issued a decision on April 7, 2016, that is within the statute of limitations. Lieutenant Colonel Marta does not waive his right to judicial review of that decision. *See Clifton Power Corp. v. F.E.R.C.*, 294 F.3d 108, 110 (D.C. Cir. 2002) ("Instead, the party that had sought administrative reconsideration may, if reconsideration is denied, challenge that denial as well as the agency's original order by filing a timely petition for review of both orders").

3. The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. § 1552, *et seq.*, which authorize and govern the ABCMR;

4. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5. Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

## II. THE PARTIES

6. Plaintiff, Lieutenant Colonel (LTC) Wayne P. Marta, a United States citizen, retired from the U.S. Army Reserve at the rank of lieutenant colonel, grade of O-5. He resides at the address provided in the caption above.

7. Defendant, the Honorable Ryan D. McCarthy, is the Secretary of the Army. He is the head of the Department of the Army. The ABCMR acts on behalf of the Secretary of the Army. He resides at the address provided in the caption above.

## III. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. LTC Marta first applied to the ABCMR in 2015 and his case was assigned docket number AR20150010538. He requested that his records be corrected to show that he elected to transfer unused educational benefits to his children. The ABCMR issued a final decision denying his application on April 7, 2016.

9. On or about March 22, 2017, LTC Marta filed an application for reconsideration with the ABCMR, requesting that his records be corrected to show that he elected to transfer unused educational benefits to his children.

10. On September 16, 2019, the ABCMR prepared its final decision, which the ABCMR transmitted to LTC Marta with a cover letter dated January 8, 2020.

11. LTC Marta has exhausted his administrative remedies, and this matter is ripe for judicial review.

12. Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of accrual.

13. LTC Marta's claims accrued on or about January 8, 2020, when the ABCMR issued its initial final decision on the merits of the claims presented.

14. LTC Marta's claims are timely before this Court.

## IV. STATEMENT OF FACTS

15. The Army last called LTC Marta to active duty on or about November 10, 2008, and he remained on active duty until his release on May 30, 2012.

16. LTC Marta retired from the U.S. Army Reserve effective June 2, 2012 with 26 years of service.

17. In 2008 the President signed into law the "Post 9/11 Veterans Education Assistance Act of 2008," also referred to as the "Post 9/11 GI Bill." *See* 38 U.S.C. §§ 3301–3325.

18. At section 3319, Congress granted authority to qualifying military personnel to transfer unused education benefits to family members.

19. The ABCMR acknowledged that LTC Marta met the eligibility requirements to transfer his unused education benefits to his dependent children.

20. LTC Marta did not elect to transfer his education benefits to his children while he was last on active duty, as he was unaware of his right to do so.

21. LTC Marta attempted to do so in May of 2015, some three years after his release from active duty and following his retirement from the Army.

22. At no time while on active duty, or otherwise, did Army personnel counsel LTC Marta as to the procedures and requirements for transferring his education benefits under section 3319.

23. At no time while LTC Marta was on active duty did the Army issue a regulation detailing the procedures and requirements for transferring education benefits under section 3319.

**First Application to the ABCMR**

24. LTC Marta applied to the ABCMR in 2015, requesting that his records be corrected to show that he "elected to transfer education benefits to his dependents under the Transfer of Education Benefits (TEB) provision of the Post-911 GI Bill."

25. LTC Marta informed the ABCMR that "[h]e discovered the error on 25 May 2015, when he attempted to elect his TEB on the Department of Veterans Affairs (VA) Website."

26. According to the ABCMR decision, LTC Marta informed the ABCMR that "DOD was required by 38 U.S.C. § 3323(b), to give members notice of their entitlement and rights and other important aspects of the education assistance provided under this statute."

27. The three-member ABCMR panel unanimously voted to deny LTC Marta's application on April 7, 2016. The ABCMR contended:

> 2. The available evidence shows the applicant was fully eligible to transfer his education benefits under the TEB prior to retirement, but did not do so. The program was implemented in July 2009, almost a year after he was ordered to Active Duty and stationed at Fort Belvoir, Virginia. He was released from active duty on 30 May 2012 and transferred to the Retired Reserve effective 2 June 2012. The applicant admits that he did not attempt a TEB election until 2015, when he was denied.
>
> 3. There is no evidence and he did not provide any evidence which shows he attempted to transfer his educational benefits to his dependents prior to his separation. Notwithstanding his sincerity, DOD, the VA, and the Army conducted a public campaign plan that generated communications through military, public, and social media venues. The information was published well in advance with emphasis on the criteria. While there may have been some confusion during the early stages after the implementation, the applicant was placed in the Retired Reserve about 3 years after the program was implemented.
>
> 4. Furthermore, it is noted that the applicant was serving in the Washington, DC, area. Accordingly, it is difficult to understand how he could not have

> been exposed to the TEB information that made available through many different news media.
>
> 5. The applicant's implication that DOD was required to personally notify each and every person who was eligible for the TEB program is without merit. Furthermore, there is no convincing documented evidence showing that he was overseas at any time during his last period of active duty service, or that any such foreign service was so significant as to cause his not becoming aware of the TEB requirements.
>
> 6. The requirement to transfer the benefit while a member is on active duty or in the Selected Reserve is embedded in the law and a change to this law is not within the purview of this Board. Because there is no evidence that shows the applicant attempted to transfer the benefit while in an active status, as required by law, there is an insufficient evidentiary basis for granting his requested relief.

**ABCMR Reconsideration Application**

28. On or about March 22, 2017, LTC Marta filed an application for reconsideration with the ABCMR, requesting that his records be corrected to show that he elected to transfer unused educational benefits to his children.

29. LTC Marta argued that Congress, through 38 U.S.C. § 3319, imposed on the Secretary of Defense the duty to publish a regulation detailing: (A) the manner of authorizing the transfer of entitlements under this section; (B) the eligibility criteria in accordance with subsection (b); and (C) the manner and effect of an election to modify or revoke a transfer of entitlement under subsection (f)(2).

30. LTC Marta informed the Board that the Secretary of Defense complied with Congress by issuing DTM 09-003, through which the Secretary imposed upon the Army the duty to publish a regulation detailing: "(1) The manner of verifying and documenting the additional service commitment, if any, under paragraph 3.a of this attachment, to be authorized to transfer education benefits; and (2) The manner of determining the eligibility to authorize the transfer of education benefits as allowed in . . . this attachment."

31. He further contended that the Secretary of Defense instructed (required) the Secretary of the Army to:

> Provide active duty participants and members of the Reserve Components with qualifying active duty service *individual pre-separation or release from active duty counseling* on the benefits under the Post-9/11 GI Bill *and document accordingly*.

(emphasis added).

32. LTC Marta provided evidence that the Army did not comply with the Secretary of Defense requirement that it publish a regulation implementing the TEB program.

33. LTC Marta further noted that the Army also had a duty to individually counsel soldiers with qualifying service and "*document accordingly*," which the Army also breached.

34. As a consequence of those breaches, LTC Marta was denied his right to specific information as to how and when he must apply to participate in the TEB program.

35. LTC Marta informed the ABCMR of the decision of the U.S. District Court for the Eastern District of Virginia, *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015), in which the plaintiff had sought judicial review of the ABCMR's decision of his request to correct his records to show that he elected to transfer unused education benefits under the same provisions of law.

36. The court in *Thompson* reversed the decision of the ABCMR, which had denied Lieutenant General Thompson's application.

37. LTC Marta noted to the ABCMR that both the *Thompson* court decision and the ABCMR's decision on Lieutenant General Thompson's application on remand preceded the date of the Board's final decision on LTC Marta's 2015 application.

38. LTC Marta contended that the *Thompson* court decision was precedential and compelled favorable relief in his own case.

39. On January 8, 2020, the ABCMR notified LTC Marta that the Board had denied his application.

40. The ABCMR reasoned:

> After reviewing the application and all supporting documents, the Board found relief is not warranted. The applicant's counsel contentions were carefully considered. Without taking into effect the alleged lack of notification to transfer education benefits prior to his retirement, the applicant acknowledged he partially used some of the Post 9/11 GI Bill prior to his retirement; the Board found this information does not support the alleged lack of knowledge of the program. <u>There is no evidence that shows he attempted to transfer education benefits and that the transfer was not processed and approved in a timely manner, which would enable the Board to possibly correct the record to show the request was accepted and timely approved</u>. Without such evidence, the Board must adhere to this law. Similar cases were mentioned in reference to previous grants to correct records to show applicants transferred education benefits prior to their separation. Each case is considered on its own individual merit. The Board agreed there is insufficient evidence to amend the previous Board's decision.

(emphasis added.)

41. On January 20, 2020, LTC Marta's counsel wrote Mr. Dennis Dingle, Director, ABCMR, and Mr. Joseph M. Masterton, Legal Advisor, ABCMR, requesting that they review the matter and consider reversing the ABCMR decision. They did not respond.

## V. PERTINENT STATUTES AND REGULATIONS

**38 U.S.C. § 3319**

42. 38 U.S.C. § 3319 authorizes and details the transfer of education benefits (TEB) program. (Because the ABCMR correctly accepted LTC Marta's eligibility to transfer, the section 3319 eligibility requirements are not detailed here.)

43. Section 3319(j) directs the Secretary of Defense, "in coordination with the Secretary of Veterans Affairs," to "prescribe regulations for the purposes of this section." Section 3319(j)(2) requires such regulations to specify:

> (A) the manner of authorizing the transfer of entitlements under this section;
>
> (B) the eligibility criteria in accordance with subsection (b); and
>
> (C) the manner and effect of an election to modify or revoke a transfer of entitlement under subsection (f)(2).

**DTM 09-003 (June 22, 2009)**

44. In response to the congressional mandate in section 3319(j), the Department of Defense issued Directive-Type Memorandum ("DTM") 09-003 on June 22, 2009.

45. Attachment 1, "Responsibilities," paragraph 3.a, directed the secretaries of the military departments to:

> Provide regulations, policy implementation guidance, and instructions governing the administration of the Post-9/11 GI Bill program. . . . Regulations must include Service implementation of kickers and the transfer of unused educational benefits as established in section 3319 of Reference (a), as outline in Attachment 2.

46. Paragraph 3.b of the DTM directed the military secretaries to:

> Ensure that all eligible active duty members and members of the Reserve Components are aware that they are automatically eligible for educational assistance under the Post-9/11 GI Bill program upon serving the required active duty time as established in chapter 33 of Reference (a).

47. Paragraph 3.g directed the secretaries to:

> Provide active duty participants and members of the Reserve Components with qualifying active duty service individual pre-separation or release from active duty counseling on the benefits under the Post-9/11 GI Bill *and document accordingly*.

(emphasis added.)

48. Paragraph 3.6(1) addresses "Time For Transfer," providing:

> An individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement to the individual's family member only while serving as a member of the Armed Forces.

49. The DTM's glossary defined "member of the Armed Forces" as:

> For the purpose of this DTM, those individuals serving on active duty or in the Selected Reserve. Does not include other members of the Ready Reserve (such as the Individual Ready reserve, standby Reserve, or retired members of the Armed Forces.)[2]

**DoD Post-9/11 GI Bill Transferability Policy Guidance (June 23, 2009)**

50. On 23 June 2009, the Department of Defense issued a three-page memorandum offering guidance on TEB. The memorandum does not state that members must elect to transfer while serving on active duty, or that failure to so elect results in the forfeiture of the unused benefits.

**Implementing Army Regulations**

51. Army Regulation (AR) 621-202, of February 8, 2016, Chapter 4, addresses the Post-9/11 GI Bill and the TEB program. That regulation replaced AR 621-202 of February 3, 1992. (LTC Marta was unable to identify any versions, including "Rapid Action Revisions," of AR 621-202 issued between February 3, 1992 and February 8, 2016.)

**Army Policy Guidance**

52. In its decisions on the subject, the ABCMR cites, without discussion, a July 10, 2009 "Post-9/11 GI Bill Implementation Policy," which "identified and established responsibilities, eligibility criteria, benefits, and detailed guidance on the administration of the [TEB] program."

53. The referenced policy, at paragraph 17.g(1), states, "A Soldier approved to transfer entitlement to education assistance under this section may transfer such entitlement only while serving as a member of the Armed Forces when the transfer is executed."

---

[2] The DTM's distribution list does not include all soldiers on active duty or serving in the Selected Reserve. *See* DTM, p. 4. Which is to say, the DTM *per se* did not serve as notice to all eligible soldiers. Hence the requirement of documented individual counseling.

***Thompson v. United States*, 119 F. Supp. 3d 462 (E.D.VA. 2015)**

54. In *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015), the court reviewed the ABCMR's decision to deny LTG Thompson's application to correct his military records to reflect that he timely elected to transfer unused education benefits. The facts of LTG Thompson's case are nearly identical to those of LTC Marta in all material ways.

55. The ABCMR denied LTG Thompson's application for essentially the same reasons it denied LTC Marta's. The ABCMR's position (adopting an Army Human Resources Command advisory opinion) was that LTG Thompson's "ignorance of the requirements could not justify an exercise of [the ABCMR's] discretion." *Thompson*, 119 F. Supp. 3d at 466.

56. In LTG Thompson's case, too, the ABCMR relied on the "massive public campaign" argument (which was made by HRC in its advisory opinion) to deny the application.

57. The Army amplified the "ignorance of the law is no defense" argument before the court, which the court rejected because "when the ignorance is a direct result of a failure to educate, the soldier cannot be blamed and is entitled to relief." *Id.* at 470.

58. According to the court:

> The ABCMR failed to explain how the Army's failure to provide LTG Thompson with the required counseling became a non-requirement because there was a public campaign and LTG Thompson had done research. The Army failed to provide LTG Thompson with the required pre-separation counseling and thus the decision to deny his application to correct his record meets the "arbitrary, capricious, or contrary to law" standard.

*Id.* at 471.

59. The Court also sought "to correct what it perceives as a grave injustice to LTG Thompson, a man who served his country honorably for 36 years. . . . By every tenet of justice and fair play that we have known, the benefits sought by LTG Thompson should be afforded to him." *Id.*

## VI. LEGAL CLAIMS

**A . The ABCMR's January 2020 decision is arbitrary, capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure because the Board failed to acknowledge the Army breached its legal duty under applicable law and further failed to make appropriate corrections**.

60. Paragraphs 1 to 59 are incorporated herein by reference.

61. The ABCMR is under a legal duty to "[T]o determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant full and fitting relief." *Haselwander v. McHugh*, 774 F.3d 990, 998 (D.C. Cir. 2014)(internal citation omitted).

62. The Army failed to counsel LTC Marta concerning his eligibility to transfer unused education benefits under 38 U.S.C. § 3319 and failed to publish a regulation concerning unused education benefits as directed by the Department of Defense. As a result of those failures, LTC Marta was not apprised of his rights, to his prejudice.

63. LTC Marta presented clear and convincing evidence that the Army breached its legal duty to counsel him as required by 38 U.S.C. § 3319, and that such breach prejudiced his right to elect to transfer unused education benefits to his dependents.

64. LTC Marta also presented clear and convincing evidence that the Army breached its legal duty pursuant to DTM 09-003, of June 22, 2009, to publish regulatory guidance pertaining to the transfer of unused education benefits under section 3319.

65. The ABCMR's failure to acknowledge that the Army breached its legal duty under 38 U.S.C. § 3319 and DTM 09-003, thereby prejudicing LTC Marta, was arbitrary, capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure.

66. The ABCMR's failure to acknowledge the error and injustice resulting from the Army's breaches of duty and to correct LTC Marta's records as requested was arbitrary, capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure.

**B. The ABCMR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law because the Board failed to follow its own prior, binding precedent and failed to provide a legitimate reason for departing from precedent.**

67. Paragraphs 1 to 66 are incorporated herein by reference.

68. The ABCMR is bound by the doctrine of precedent. *See*, *e.g.*, *Wilhelmus v. Geren*, 796 F.Supp.2d 157, 162 (D.D.C. 2011).

69. It is axiomatic that agencies must treat like cases in a like manner. *Indep. Petroleum Ass'n of Am. V. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996).

70. If an agency chooses to depart from precedent, it must "provide a legitimate reason" for its action. *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005).

71. The ABCMR utterly failed to offer a legitimate reason for deciding LTC Marta's application differently than it did LTG Thompson's application on remand from the U.S. District Court for the Eastern District of Virginia.

72. The ABCMR addressed the issue of precedent simply by stating, "Similar cases were mentioned in reference to previous grants to correct records to show applicants transferred education benefits prior to their separation. Each case is considered on its own individual merit."

73. No legitimate reason exists for treating LTC Marta's application differently than that of LTG Thompson or other applicants who were not counseled individually concerning their ability to transfer unused education benefits as was required by law.

74. The ABCMR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure.

**C. The ABCMR decisions are contrary to that of the D.C. Circuit decision in *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014), in which the court rejected as unlawful the same reasoning employed by the ABCMR in LTC Marta's case.**

75. Paragraphs 1 to 74 are incorporated herein by reference.

76. In LTC Marta's 2015 application to the ABCMR, he requested that the Board correct his records to reflect that he had elected, while still on active duty, to transfer unused education benefits to his dependents.

77. LTC Marta contended that his failure to do so was due to the Army's own failure to counsel him as to his right to do so, as required by law.

78. The error and injustice LTC Marta sought to correct, then, was his inadvertent and unwitting failure to make the required election while on active duty.

79. The ABCMR rejected LTC Marta's 2015 application in part because:

> The requirement to transfer the benefit while a member is on active duty or in the Selected Reserve is embedded in the law and a change to this law is not within the purview of this Board. Because there is no evidence that shows the applicant attempted to transfer the benefit while in an active status, as required by law, there is an insufficient evidentiary basis for granting his requested relief.

80. In his 2017 application, LTC Marta again sought the correction of his records to reflect that he timely elected to transfer education benefits to his dependents.

81. The ABCMR again denied the application, in part based on the same reasoning it employed in its 2016 decision:

> There is no evidence that shows he attempted to transfer education benefits and that the transfer was not processed and approved in a timely manner, <u>which would enable the Board to possibly correct the record to show the request was accepted and timely approved. Without such evidence, the Board must adhere to this law.</u>

(Emphasis added).

82. In effect, then, the ABCMR reasoned that because the law required a timely election while on active duty, and LTC Marta did not make a timely election, the Board could not correct LTC Marta's record to reflect that he had made a timely election.

83. In *Haselwander v. McHugh*, 774 F.3d 990, 1000 (D.C. Cir. 2014), the D.C. Circuit reversed the decisions of the U.S. District Court for the District of Columbia and the ABCMR, explicitly rejecting the very reasoning employed here by the ABCMR.

84. To the extent the ABCMR concluded that it lacked legal authority to make the records corrections sought by LTC Marta, such conclusion was plainly erroneous and contrary to law.

85. Section 1552(a) authorizes Defendant, acting through the ABCMR, to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

86. The ABCMR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law and mandatory procedure.

**REQUEST FOR RELIEF**

Wherefore, LTC Marta requests that the Court grant the following relief:

(A) Hold unlawful in their entirety and set aside the ABCMR's 2016 and 2020 decisions;

(B) Enter judgment in favor of LTC Marta on all counts of this complaint;

(C) Remand the matter to the ABCMR for further actions in accordance with the Court's findings, decision, and order;

(D) Upon proper application, award LTC Marta attorney fees under the Equal Access to Justice Act; and

(E) Award such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Brian D. Schenk*

Brian D. Schenk
(MN #0391577)
Midwest Military & Veterans Law, PLLC
310 4th Ave. S, Ste 5010
Minneapolis, MN 55415
Ph: (202) 557-6570
Fax: (612) 206-3170
Email: brian@militaryandveteranslaw.com

Dated: April 20, 2020