UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WAYNE P. MARTA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 20-cv-1020 (APM) |
| JOHN E. WHITLEY, Acting Secretary of the Army, | ) ) ) ) | |
| Defendant.[1] | ) ) | |

# MEMORANDUM OPINION

Plaintiff Lieutenant Colonel Wayne P. Marta attempted to transfer unused Post-9/11 GI Bill education benefits to his dependents after completing his active duty service. His request was rejected on the ground that such a transfer had to be made while on active duty. Marta then petitioned the Army Board for Correction of Military Records ("ABCMR" or "the Board") to correct his military records to reflect an active-duty election. The Board denied his request. Marta now claims that the Board's denial was arbitrary, capricious, unsupported by substantial evidence, and contrary to law in violation of the Administrative Procedure Act ("APA"). The court agrees. For the reasons that follow, the court will enter judgment in favor of Marta and against Defendant, Acting Secretary of the Army John E. Whitley, and remand the case to the ABCMR for further consideration consistent with this Memorandum Opinion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes John E. Whitley as defendant in this case.

I.

A.

In 2008, Congress passed the "Post-9/11 Veterans Education Assistance Act of 2008" ("Post-9/11 GI Bill" or "the Act"). *See* 38 U.S.C. § 3301 *et seq*. The Post-9/11 GI Bill provides monetary benefits to qualifying service members to assist them in readjusting to civilian life, particularly through financial assistance for higher education. *See id.* § 3311(a). The Act authorizes eligible military personnel to transfer their unused education benefits to family members, *see id.* § 3319, but, critical to this case, the Act provides that an individual "may transfer such entitlement *only while serving as a member of the Armed Forces when the transfer is executed*," *id.* § 3319(f)(1) (emphasis added). Congress directed the Secretary of Defense to "prescribe regulations" that "shall specify . . . (A) the manner of authorizing the transfer of entitlements under this section; (B) the eligibility criteria in accordance with subsection (b); and (C) the manner and effect of an election to modify or revoke a transfer of entitlement under subsection (f)(2)." *Id.* § 3319(j)(1)–(2).

Pursuant to the Act, the Department of Defense ("DOD") issued Directive-Type Memorandum 09-003 ("DTM 09-003"), which, among other things, established the policy "for authorizing the transferability of education benefits." A.R. at 38.[2] DTM 09-003 directs the secretaries of military departments to implement policies to "[e]nsure that all eligible active duty members and members of the Reserve Components are aware that they are automatically eligible for educational assistance under the Post-9/11 GI Bill program upon serving the required active duty time," A.R. at 43, and to "[p]rovide active duty participants and members of the Reserve Components with qualifying active duty service individual pre-separation or release from active

---

[2] Citations to the Administrative Record ("A.R.") can be found in the two-volume Joint Appendix, *see* ECF Nos. 20, 20-1, and 20-2.

duty counseling on the benefits under the Post-9/11 GI Bill and document accordingly," *id*. Consistent with the statutory language in section 3319(f), DTM 09-003 also notes that "[a]n individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement to the individual's family member only while serving as a member of the Armed Forces."  A.R. at 54.

As directed by DTM 09-003, on July 10, 2009, the U.S. Army issued a Post-9/11 GI Bill Implementation Policy "in order to enhance the Army's recruiting and retention programs."  A.R. at 72.  The policy provides that "[t]he Commanding General Installation Management Command [] is responsible for ensuring that Education Services Officers," among other things,

> (4) Conduct mandatory educational benefits counseling for all Soldiers separating from the Army . . . no later than 150 days before separation date . . . [;]
> (5) Record the . . . counseling statement on DA Form 669 (Army Continuing Education System (ACES) Record) after completion of mandatory counseling . . . [;] [and]
> (6) Require [the] Soldier's signature attesting to the receipt of counseling.

A.R. at 73–74.  Thus, under both DOD and Army policy, every soldier transitioning out of the Army was to receive documented counseling on the education benefits available under the Post-9/11 GI Bill.  Such counseling presumably would include direction on the transfer of education benefits to eligible family members.  Marta maintains he never received such counseling.  A.R. at 24.  The Army produced no evidence to the contrary.

**B.**

Marta served in the U.S. Army Reserve for 26 years.  *See* A.R. at 147–48.  He was last recalled to active duty on or about November 10, 2008, and remained on active duty until his release on May 30, 2012, effectively retiring on June 2, 2012.  *See id.*  Marta availed himself of

some Post-9/11 GI Bill education benefits but failed to transfer the balance of those benefits to his children while on active duty. *See* A.R. at 132, 389.

Approximately three years after retiring, on May 25, 2015, Marta attempted to transfer his unused education benefits to his children on the Department of Veterans Affairs website, but his request was denied. *See id.* Thereafter, Marta filed an application for correction with the ABCMR, requesting that it "[c]orrect [his] record to reflect an election made to transfer [his] unused Post-9/11 GI Bill Education Benefits equally to [his] two children." A.R. at 131. In his application, Marta argued the DOD was required by 38 U.S.C. § 3323(b) "to give members notice of their entitlement and rights 'and other important aspects' of the education assistance provided under the statute," but had failed to do so. *See* A.R. at 133, 135. Marta asserted that he was not aware of the rule that education benefits could be transferred only while on active duty. *See* A.R. at 132.

On April 7, 2016, the three-member ABCMR unanimously voted to deny Marta's application. *See* A.R. at 383. In its decision, the Board noted Marta "was fully eligible to transfer his education benefits under the ['Transfer of Education Benefits,' or 'TEB,' program] prior to retirement, but did not do so." A.R. at 389. The ABCMR further explained,

> The requirement to transfer the benefit while a member is on active duty or in the Selected Reserve is embedded in the law and a change to this law is not within the purview of this Board. Because there is no evidence that shows the applicant attempted to transfer the benefit while in an active status, as required by law, there is an insufficient evidentiary basis for granting his requested relief.

*Id*. The Board also stated that it found Marta's claim that "DOD was required to personally notify each and every person who was eligible for the TEB program [to be] without merit." *See id.*

On March 20, 2017, Marta filed an application for reconsideration with the ABCMR, again requesting the same correction of his records. A.R. at 11, 17. In his second application, Marta

4

argued that (1) the Army failed to provide him "individual pre-separation or release from active duty counseling on the benefits under the Post-9/11 GI Bill," as required by DTM 09-003; and (2) *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015), a case from the Eastern District of Virginia, compelled the Board to grant relief in his case. *See* A.R. at 22–26 (internal quotation marks omitted).

On January 8, 2020, the Board denied Marta's request for reconsideration. A.R. at 2–9. The Board once again pointed out that active-duty status was a pre-condition to transfer education benefits: "Without taking into effect the alleged lack of notification to transfer education benefits prior to his retirement, the applicant is advised the requirement is embedded in public law." A.R. at 6. The Board also observed that Marta had used some Post-9/11 GI Bill education benefits while on active duty, a fact the Board found "does not support the alleged lack of knowledge of the program." *Id.* The Board also determined that "[t]here is no evidence that shows [Marta] attempted to transfer education benefits and that the transfer was not processed and approved in a timely manner, which would enable the Board to possibly correct the record to show the request was accepted and approved timely." *Id.* "Without such evidence," the Board explained, it "must adhere to this law." *Id.* Finally, although not expressly mentioning the Eastern District of Virginia's decision in *Thompson*, the Board acknowledged that Marta had brought "[s]imilar cases" to its attention but said "[e]ach case is considered on its own individual merit." *Id.* The Board concluded that "there is insufficient evidence to amend the previous Board's decision." *Id.*

On April 20, 2020, Plaintiff filed this lawsuit, asserting that the Board's denial of his application violated the APA. Compl., ECF No. 1. Plaintiff moved for summary judgment on August 28, 2020. Pl.'s Mot. for Summ. J. on the A.R., ECF No. 13 [hereinafter Pl.'s Mot.].

Defendant cross-moved on October 2, 2020. *See* Def.'s Cross-Mot. for Summ. J., ECF No. 15 [hereinafter Def.'s Mot.]. The parties' cross-motions are now ripe for consideration.

## II.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the moving party demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But in a case involving review of a final agency action, the Rule 56 standard "does not apply because of the limited role of a court in reviewing the administrative record." *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81 (D.D.C. 2007). Instead, "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996) (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1224 (D.C. Cir. 1993)). The court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Charter Operators of Alaska v. Blank*, 844 F. Supp. 2d 122, 127 (D.D.C. 2012) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).

Under the APA, courts must set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2). "The scope of . . . review under this standard is narrow," and "a court is not to substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (cleaned up). The agency must "examine[] the relevant data and articulate[] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Stewart v. Stackley*, 251 F. Supp. 3d 138, 156 (D.D.C. 2017) (cleaned up); *see*

*also Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) (an agency acts arbitrarily and capriciously when it "fail[s] to reasonably reflect upon the information contained in the record and grapple with contrary evidence"). "[C]onclusory statements will not do; an agency's statement must be one of reasoning." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (cleaned up); *see also Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[T]he agency must explain why it decided to act as it did.").

In reviewing the agency's explanation, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 285 (1974) (internal quotation marks omitted). An agency decision is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation . . . that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins.* (*State Farm*), 463 U.S. 29, 43 (1983). In such cases, the "court should not attempt itself to make up for such deficiencies." *Id.* That is, the court "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

These general APA principles are imbued with deference to an agency, but Defendant argues that even more deference is warranted in this case. Defendant contends that the Board's decisions must be reviewed under an "'unusually deferential application of the arbitrary or capricious standard of the APA.'" Def.'s Mot., Mem. of P. & A. in Supp. of Def.'s Cross-Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 15-1 [hereinafter Def.'s Br.], at 14

*also Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) (an agency acts arbitrarily and capriciously when it "fail[s] to reasonably reflect upon the information contained in the record and grapple with contrary evidence"). "[C]onclusory statements will not do; an agency's statement must be one of reasoning." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (cleaned up); *see also Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[T]he agency must explain why it decided to act as it did.").

In reviewing the agency's explanation, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 285 (1974) (internal quotation marks omitted). An agency decision is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation . . . that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins.* (*State Farm*), 463 U.S. 29, 43 (1983). In such cases, the "court should not attempt itself to make up for such deficiencies." *Id.* That is, the court "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

These general APA principles are imbued with deference to an agency, but Defendant argues that even more deference is warranted in this case. Defendant contends that the Board's decisions must be reviewed under an "'unusually deferential application of the arbitrary or capricious standard of the APA.'" Def.'s Mot., Mem. of P. & A. in Supp. of Def.'s Cross-Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 15-1 [hereinafter Def.'s Br.], at 14

(internal quotation marks omitted) (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *see Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514–15 (D.C. Cir. 1989); *see also Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (noting the deferential standard of review applied in APA cases involving military boards). Marta disagrees. He maintains that because he asks only that the court review whether the Board properly followed its own procedures, the unusually deferential standard is inappropriate in this case. *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s Cross-Mot. for Summ. J. & Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J., ECF No. 17, [hereinafter Pl.'s Reply], at 1–2.

The D.C. Circuit has explained that the increased deference afforded military board decisions "stems from statutory language providing that the Secretary of each service of the branch '*may* correct any military record . . . when the Secretary *considers it necessary* to correct an error or remove an injustice.'" *Hensley v. United States*, 292 F. Supp. 3d 399, 408 (D.D.C. 2018) (quoting 10 U.S.C. § 1552(a)(1)); *see Kreis*, 866 F.2d at 1513–15. Under this more deferential standard, "[f]or a plaintiff to overcome the strong presumption that the military administrators discharged their duties lawfully and in good faith, he must show 'by cogent and clearly convincing evidence' that the [Board's] decision was the result of an injustice, or material legal error." *Coburn v. McHugh*, 77 F. Supp. 3d 24, 30 (D.D.C. 2014) (quoting *Epstein v. Geren*, 539 F. Supp. 2d 267, 275 (D.D.C. 2008)).

As Marta correctly notes, however, "there are circumstances when the Court should not and does not afford a military records correction board decision any deference beyond the traditional APA standard of review." Pl.'s Reply at 1. The law in this Circuit differentiates between review of "military judgment requiring military expertise," which should be reviewed under the "unusually deferential" standard, and "review of the Board's application of a procedural

8

regulation governing its case adjudication process," which is reviewed under the traditional arbitrary and capricious APA standard. *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005). The Board action under review here better fits within the latter category. The questions here "do[] not involve a military judgment requiring military expertise," *id.*, but rather the soundness of the Board's reasoning under D.C. Circuit precedent and familiar principles of administrative law. Thus, the case concerns "issues of procedural fairness." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (reaffirming the distinction established in *Kreis*, 406 F.3d at 686, and finding that the "traditional APA standard should be applied" where plaintiff raised "issues of procedural fairness"); *cf. Hensley*, 292 F. Supp. 3d at 408 ("[W]hen deciding legal issues regarding whether an agency has properly adhered to its procedures, courts [] afford[] no more deference than they do when reviewing the decisions of civilian agencies." (citing *Remmie v. Mabus*, 898 F. Supp. 2d 108, 118–19 (D.D.C. 2012)). Accordingly, the court applies the traditional APA standard of review to Marta's claims.

## III.

Marta makes three arguments in support of his claim that the Board's denial of his application was arbitrary and capricious: (1) that the Board failed to "acknowledge the Army committed error or injustice by breaching its legal duty" to counsel him on the Post-9/11 GI Bill prior to separating from the military, *see* Pl.'s Mot., Pl.'s Stmt. of P. & A. in Supp. of Mot. for Summ. J. on the A.R., ECF No. 13-1 [hereinafter Pl.'s Br.], at 12; (2) that the Board "failed to follow the binding precedent [of *Thompson*] and failed to provide a legitimate reason for departing from" it, *see id.* at 20; and (3) that the Board's reasoning should be rejected under the D.C. Circuit's holding in *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014)," *see* Pl.'s Br. at 23. The court discusses these arguments in reverse order, beginning with a discussion of *Haselwander* before

9

turning to whether the Board failed to "provide a legitimate reason" not to follow *Thompson*. Because the court sides with Marta on both of these grounds, it need not address his first argument—whether the Board failed to acknowledge that the Army breached its legal duty under applicable law.

### A.

In *Haselwander v. McHugh*, the D.C. Circuit reviewed an ABCMR decision denying an applicant's request to correct his medical records to reflect that he had been wounded in action in Vietnam, which would qualify him to receive a Purple Heart. 774 F.3d at 992. Given the battlefield circumstances of Haselwander's treatment, "those who attended to his wounds never had a chance to fill out any medical paperwork for Haselwander[,] [and] [a]s a result, [his] Army records d[id] not show that he was wounded in hostile action." *Id.* at 991. Despite "uncontested, creditable evidence" in the record confirming Haselwander's wounds, the Board denied his request, *id.* at 993, and urged that its decision "should be upheld because [he] ha[d] no medical records of his injury and treatment," *id.* at 992. The D.C. Circuit found "the Board's decision defied reason and [was] devoid of any evidentiary support," characterizing it as "utterly illogical" and "patently unfair." *Id.* at 992–93. The court explained that "[i]t simply ma[de] no sense for the Board to say, 'We are denying his application because he has no medical records,' where the very error stated in Haselwander's application to the Board was that his Army record lacks the medical records." *Id.* at 1000. The Board decisions in this case are similarly flawed.

In its 2016 decision, the Board stated in relevant part, "[b]ecause there is no evidence that shows [Marta] attempted to transfer the benefit while in an active status, as required by law, there is an *insufficient evidentiary basis* for granting his requested relief." A.R. at 389 (emphasis added). That reasoning is "utterly illogical" and "patently unfair." *Haselwander*, 774 F.3d at 992–93.

10

Of course Marta did not present evidence of an attempted transfer of education benefits while on active duty. His claim was he did not know about the transfer benefit or its restrictions because the Army had failed to provide him mandatory education benefits counseling upon retirement. A.R. at 17. The Army supplied no evidence to contradict Marta's asserted lack of knowledge. It therefore was unreasonable for the Board to have denied his claim based on the absence of any attempt to make an active-duty transfer.

The Board exhibited similarly faulty reasoning on reconsideration. It stated in relevant part: "There is no evidence that shows [Marta] attempted to transfer education benefits and that the transfer was not processed and approved in a timely manner, which would enable the Board to possibly correct the record[.]" A.R. at 6. But again, given Marta's claim, the absence of an attempted active-duty transfer is hardly surprising. It was illogical for the Board to have demanded Marta produce such evidence. By denying Marta relief for the very reason he sought records correction in the first place, the Board "misapprehend[ed] its powers and duties as a record correction body." *Haselwander*, 774 F.3d at 992.[3]

In his opposition, Defendant denies "any confusion on the part of the Board with respect to" its statutory authority. Def.'s Br. at 25. Defendant maintains that the Board's 2019 decision shows "that the Board declined to exercise its discretion," not based on a misunderstanding of its authority, but rather "based on Plaintiff's *constructive knowledge* of the TEB requirement." *Id.* (emphasis added). But that is not what the Board's decision says. The Board did not impute constructive knowledge of the active-service requirement to Marta. Rather, the Board expressly held that the lack of an attempted transfer doomed Marta's effort at records correction. *See* A.R.

---

[3] Importantly, Defendant has not taken the position that the Board lacked the statutory authority to provide the relief sought. *See* Def.'s Br. at 18. Though the Post-9/11 GI Bill is clear that a transfer of education benefits must occur while a solider is on active duty, the Board does not contend that it was powerless to provide relief from that restriction "to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

11

at 6 ("There is no evidence . . . *which would enable* the Board to *possibly* correct the record to show the request was accepted and approved timely. *Without such evidence*, the Board must adhere to th[e] law." (emphasis added)). This was not reasoned decisionmaking.

## B.

Marta also argues that the Board's decision was arbitrary and capricious because it failed to distinguish his case from "binding precedent." *See* Pl.'s Br. at 20–23. In his application for reconsideration, Marta cited to *Thompson v. United States*, 119 F. Supp. 3d 462 (E.D. Va. 2015)— a case with facts quite similar to this one. *See* A.R. at 22–26. *Thompson* also involved an ABCMR decision denying a veteran's application to correct his record to reflect a transfer of Post-9/11 GI Bill education benefits while on active duty. 119 F. Supp. 3d at 469. The "gravamen" of Thompson's application, like Marta's, was the Army's failure to provide him with individual pre-separation counseling on the TEB requirements. *Id.* at 466. The Board denied Thompson's request on the grounds that (1) his ignorance of the law was no excuse and (2) Thompson had constructive knowledge of the active-duty requirement based on research he had conducted, generalized counseling he had received, and a public relations campaign concerning the Post-9/11 GI Bill. *See id.* at 466–67. Grounding its decision in "the tenets of justice," the court granted summary judgment to Thompson, explaining that the Board's decision "failed to explain how the Army's failure to provide LTG Thompson with the required [individualized] counseling became a non-requirement because there was a public campaign and [because] LTG Thompson had done research." *Id.* at 471. Because the court found "[t]he Army failed to provide LTG Thompson with the required pre-separation counseling," it concluded that the "decision to deny his application to correct his record me[t] the 'arbitrary, capricious, or contrary to law' standard." *Id.* On remand,

the Board approved Thompson's application and corrected his record to reflect that he had elected to transfer the education benefits to his dependents while on active duty.  A.R. at 119.

Marta asserted before the Board that "because of the strong factual and legal similarity, *Thompson* control[s] the outcome of [Marta's] case, and the ABCMR's failure to consider and follow *Thompson* was legal error."  A.R. at 26.  Marta was only partially correct.  The Board did not have an obligation to "follow" *Thompson*, but it did have an obligation to "consider" it.  As a single district court decision, *Thompson* was binding upon the Board in Thompson's case, but it had no broader precedential effect.  *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("[A] decision of a federal district court judge is not binding precedent." (cleaned up)).  The Board therefore was not strictly "bound" by *Thompson*.

Yet, the requirement of reasoned decisionmaking compelled the Board to consider the case.  "Like a court, '[n]ormally, an agency must adhere to its precedents in adjudicating cases before it.'"  *Jicarilla Apache Nation v. U.S. Dep't. of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (quoting *Consol. Edison Co. of N.Y. v. FERC*, 315 F.3d 316, 323 (D.C. Cir. 2003)).  This is not to say that that Board is required to identify and distinguish every similar prior decision.  But "the need to consider relevant precedent becomes especially acute when a plaintiff has pointed to a specific prior decision as very similar to his own situation."  *Wilhelmus*, 796 F. Supp. 2d at 162.  "In such cases, the Board may not simply ignore such precedent for the sake of expediency."  *Id.*  Yet, that is precisely what the Board did here.  Although acknowledging that Plaintiff had "mentioned" "[s]imilar cases," the Board nowhere referenced *Thompson* despite its analogous facts, let alone attempted to distinguish it.  A.R. at 64.  Instead, the Board obliquely dismissed Marta's reference to *Thompson* with the obvious truism that "[e]ach case is considered on its own individual merit."  *Id.*  That is not reasoned decisionmaking.  *See Wilhelmus*, 796 F. Supp. 2d at

163 (overturning ABCMR decision where it "acknowledg[ed] [a] prior case's existence, . . . [but] entirely failed to distinguish it or to justify why the outcome in this case was different").

Defendant now seeks to distinguish *Thompson* for the first time. *See* Def.'s Br. at 22–24; Def.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 19, at 6.  But the court cannot affirm an agency decision based on the post-hoc rationalizations of counsel. *See State Farm*, 463 U.S. at 50. An agency's action "must be upheld, if at all, on the basis articulated by the agency itself." *Id.* On remand, the Board must meaningfully address Marta's reliance on *Thompson*.

## IV.

The court agrees with Marta that the Board's denial of his application for correction was flawed in two respects: (1) the Board illogically rejected the application because Marta did not produce evidence of an attempted transfer while on active duty and (2) it failed to adequately consider *Thompson*. For these reasons, the Board's decision was arbitrary and capricious and the court remands for further consideration.

In light of the remand, the court need not consider Marta's third ground for reversal—that the Board failed to recognize the Army's legal duty to counsel him on the Post-9/11 GI Bill prior to separation. *See* Pl.'s Br. at 12. Nevertheless, the court offers the following for the Board's consideration. In 2016, the Board dismissed Marta's assertion about the lack of retirement counseling, stating that "[t]he applicant's implication that DOD was required to personally notify each and every person who was eligible for the TEB program is without merit." A.R. at 389. In its 2019 decision, the Board said that "[w]ithout taking into effect the alleged lack of notification to transfer education benefits prior to his retirement, the applicant is advised the requirement is embedded in public law." A.R. at 6. In neither instance did the Board address the plain language of DTM 09-003 or Army policy. DTM 09-003 requires that the "Secretaries of the Military

14

Departments *shall* . . . [p]rovide active duty participants and members of the Reserve Components with qualifying active duty service *individual* pre-separation or release from active duty counseling on the benefits under the Post 9/11 GI Bill and document accordingly." A.R. at 42–43 (emphasis added). Similarly, the Army-issued Implementation Policy directs educational officers to "[c]onduct mandatory educational benefits counseling for all Soldiers separating from the Army . . . no later than 150 days before separation date." Thus, both DTM 09-003 and Army policy would appear to require individualized pre-retirement counseling of soldiers like Marta to advise them of their benefits under the Post-9/11 GI Bill. The Board appears not to have given these directives sufficient consideration in evaluating Marta's request.[4] The court urges it to do so on remand.

## V.

For the foregoing reasons, the court grants Plaintiff's motion for summary judgment, ECF No. 13, denies Defendant's cross-motion for summary judgment, ECF No. 15, and remands the case to the Board for further consideration consistent with this Memorandum Opinion. A final order accompanies this Memorandum Opinion.

Dated: March 31, 2021

Amit P. Mehta
United States District Court Judge

---

[4] In his cross-motion for summary judgment, Defendant makes a point to emphasize that "the Army did not have a *statutory* duty to counsel Plaintiff." Def.'s Br. at 19 (emphasis added). That is of no consequence, however, because an agency is bound by its own internal policy and regulations. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (explaining that "military departments and agencies in general, [are] bound to follow [their] own regulations").